LEVERETT A. PRATT AND WALTER KOEPPE v. THE CLERK AND CHAIRMAN OF THE BOARD OF SUPERVISORS OF CHEBOYGAN CO.

BOARD OF SUPERVISORS—ALLOWANCE OF CLAIM AGAINST THE COUNTY—DUTY OF CHAIRMAN AND CLERK TO ISSUE ORDER THEREFOR.

Relators applied for *mandamus* to compel the respondent clerk to make, issue, and deliver to relators, and the respondent chairman to countersign an order or voucher on the treasurer of Cheboygan county in the usual form for the sum of $875, being the amount allowed relators by the board of supervisors of said county for their services as architects in preparing plans and specifications for a county court house. An order to show cause was granted, and on the hearing on petition and answer had February 19, 1895, a writ of *mandamus* was issued.

*Shepard & Riley*, for relators.

*Frost & Sprague*, for respondents, contended:

1. That relators were never employed by the board of supervisors of Cheboygan county to draw plans and specifications for the erection of a contemplated court house, in the sense in which the word "employed" is usually used, but that relator Pratt was selected by said board as the party to whom a contract therefor should be tendered, as appears by the minutes of the meeting of said board.

[The minutes show that a motion was made to proceed to an informal ballot for the selection of an architect to construct the new court house, which motion prevailed; that an informal ballot was taken, and relator Pratt received all of the 19 votes cast, whereupon a motion "that the informal ballot be declared formal, and relator Pratt be chosen the architect to furnish plans for the new court house" was carried by a vote of 16 to 4, after which the action set forth in the latter portion of paragraph b of the "facts established" was taken. EDITOR.]

2. That by the writ of injunction the relators were enjoined from taking any steps in the matter of furnishing said plans and specifications.

3. That the action of the board of supervisors in voting said $875 to relators was in direct violation of said injunction; that it was illegal and void because there was no money in the county treasury or provided to come into such treasury that had been raised for the purpose of paying relators' alleged claim, and was without consideration, and worked a fraud upon the tax-payers of Cheboygan county.

The facts as established by the petition and answer were:

a—That relators are copartners and architects, and draw plans for public buildings.

b—That at a meeting of the board of supervisors of Cheboygan county held May 26, 1894, by a vote of 16 to 4 relator Pratt was chosen as the architect to furnish and prepare plans for the court house proposed to be erected in said county, after which, and by the unanimous vote of said board, the county clerk was instructed to advertise for bids for the construction of said court house in accordance with the plans and specifications of the relators, said advertisement to be drawn under the supervision of the prosecuting attorney of said county.

c—That on June 19, 1894, an injunction was issued enjoining the issuance of certain bonds authorized by the board of supervisors by resolution adopted May 19, 1894, to be issued and sold for the purpose of raising money with which to erect a court house in said county; also the execution and delivery of any contract or contracts for the construction of said court house; also the consummation of the purchase of a certain court house site described in said injunction; also the payment of any balance or purchase price unpaid on the purchase of said property; also the borrowing of any sum of money for the payment for said premises; also the issuance of any order or warrant or obligation of said county therefor; also the taking of any other or further steps towards the erection of said court house or the purchase of a court house site.

d—That on July 23, 1894, said injunction was modified so as to permit said board of supervisors to purchase and pay for a court house site, or if already purchased to pay for such site, and to borrow money for that purpose, or, if already borrowed, to issue to evidence said indebtedness the bond, warrant, or other usual obligation issued by counties under similar circumstances.

e—That said injunction was served upon both of the relators and on respondents, and as modified was in force when respondents refused to make and countersign respectively the order in favor of relators.

f—That relators at various times prior to their October session in 1895 had been before said board of supervisors urging the payment of their alleged claim, which said board had always refused to recognize or pay; that at said October session said board having had said plans and specifications, which, after the service of said injunction, had been delivered to the clerk of said board, presented before and to it by relators, and having a bill from said relators before it, accepted said plans and specifications and the services of relators, and by a vote of 19 to 2 allowed said bill at the sum of $875, with the further condition that if the county ever used said plans said $875 should be considered a payment for the same.

*g*—That after the adjournment of said board of supervisors, said vote allowing said account remaining in full force, relators, through their duly authorized attorneys, demanded of respondents that they issue and deliver to relators such an order or voucher upon the county treasurer as would enable relators to receive and said treasurer to pay on presentation the sum allowed to relators as aforesaid, but that respondents refused to comply with said demand.

[Respondents in their answer denied that any contract was ever entered into between Cheboygan county and relators; that said county ever accepted any employment tendered by relators, and affirmed that in pursuance of the resolution of the board of supervisors of date May 26, 1894, the legally appointed representatives of said board prepared and presented to relators a contract in accordance with said resolution, which relators refused to accept, but drew up another agreement which they were willing to sign, but the same was not accepted by said representatives because not in accordance with the resolution and desires of said board. Respondents further set up that the plans and specifications were never presented to or accepted by the said board of supervisors until after the service of the writ of injunction. EDITOR.]